JESSICA K. PRIDE (SBN 249212)
jpride@pridelawfirm.com
DANTE PRIDE (SBN 262362)
dpride@pridelawfirm.com
ALFRED VON KESSLER IV (309453)
avk@pridelawfirm.com
THE PRIDE LAW FIRM
2831 Camino Del Rio S., Suite 104
San Diego, CA 92108
Telephone: (619) 516-8166
Facsimile: (619) 785-3414
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

S.M.,

      Plaintiff,

v.

UNITED STATES OF AMERICA (FEDERAL BUREAU OF PRISONS); RAY J. GARCIA; DAVID PEREZ; and DOES 1-25, inclusive,

      Defendants.

CASE NO.  4:23-cv-3562

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. Beginning in approximately 2012, Defendant David Perez ("PEREZ"), a Discipline Hearing Officer ("DHO") at Federal Correctional Institution – Dublin ("FCI Dublin") owned and operated by Defendant the United States of America (Federal Bureau of Prisons) ("United States"), sexually assaulted Plaintiff S.M., a minimum-security inmate, in violation of federal and state law.

2. Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to federal inmates. Under PREA, the U.S.

Department of Justice promulgated detailed regulations that provide precise procedures that prisons must follow. The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

3.      Defendant PEREZ repeatedly subjected Plaintiff to sexual abuse. In doing so, Defendants violated Plaintiff's Constitutional rights and California law on gender violence, sexual assault, and common law on battery.

4.      Defendant RAY J. GARCIA ("GARCIA") was the associate warden at FCI Dublin between 2018 and November 2020, and the warden of FCI Dublin from November 2020 to July 2021 – part of the period that Plaintiff was being abused by Defendant PEREZ. As the warden, GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin. GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

5.      Defendant GARCIA was also arrested and charged with sexual abuse of a ward based on his sexual abuse of multiple female inmates at FCI Dublin. He was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact, and one count of lying to the FBI. Defendant GARCIA was sentenced to 5 years and 10 months in prison.

6.      Defendant GARCIA led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA. Thus, the man responsible for reporting incidents to the government and teaching inmates how to report rape was in fact a serial rapist of inmates, and he was clearly tolerating abuse by many more of his underlings, including PEREZ

7.      Defendant GARCIA knew or should have known that the other correctional officers under his supervision were sexually assaulting inmates before and after Plaintiff was abused. Despite this knowledge, Defendant GARCIA did not do anything to stop it, even though he had a duty to do so. Due to the fact that

GARCIA had knowledge of prior sexual abuse at FCI and failing to do anything about it, it allowed FCI agents, representatives, and employees to abuse Plaintiff.

8.     Defendant GARCIA knew or should have known that inmates complained about the assaults.  Defendant GARCIA knew or should have known that the inmates were subjected to retaliation. Because Defendant did not investigate complaints of abuse and harassment and did not do anything to stop it, inmates, including Plaintiff, were abused. PREA guidelines and FCI Dublin policies and procedures required all inmate complaints of sexual assault and sexual abuse filed or reported internally be reported to Defendant GARCIA. During GARCIA'S tenure, complaints of sexual assaults of inmates by correctional officers and/or staff were reported.

9.     With knowledge of prior abuse against inmates by FCI Dublin , representatives, and employees, Defendant GARCIA failed to protect the inmates and turned a blind eye. Such behavior set the tone for rape culture at FCI Dublin, garnering Garcia and his subordinate correctional officers and employees the nickname – "the Rape Club."

10.     As a result of Defendants' (including GARCIA) actions, Plaintiff suffered numerous emotional injuries and incurred severe personal injuries, which continue to affect her today.

11.     Further, GARCIA and others inadequately supervised and trained the prison's correctional officers and other employees, including PEREZ.

12.     Plaintiff brings this civil action and asserts claims: (1) against PEREZ, GARCIA, and DOES 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause (Excessive Force) and against PEREZ under sexual assault statutes, including California's gender violence statute (Civil Code §§ 52.4 and 1708.5); (2) against PEREZ under California's battery statute; (3) against GARCIA and Does 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause (Deliberate Indifference); (4) against the United States

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

under the Fifth Amendment's Due Process Clause (Procedural Due Process); and (5) against the United States under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 1671-2680) ("FTCA") for various tort claims against all Defendants arising under California common law committed within the course and scope of their federal office or employment.

13.     For these violations, Plaintiff seeks nominal, compensatory, and punitive damages, attorneys' fees and costs, and any other relief that the Court deems appropriate.

## JURISDICTION AND VENUE

14.     Plaintiff's claims arise under the United States Constitution, California statutory law, California common law, and the FTCA. The Court has diversity jurisdiction over Plaintiff's entire action under 28 U.S.C. § 1332 because Plaintiff and Defendants are diverse in citizenship and more than $75,000 is in controversy. The Court also has federal question jurisdiction over Plaintiff's Constitutional claims and FTCA claims (which have been administratively exhausted) under 28 U.S.C. § 1331. And the Court has supplemental jurisdiction over Plaintiff's California statutory and common-law claims under 28 U.S.C. § 1367 because these state-law claims arise from a common nucleus of operative fact with Plaintiff's federal question claims.

15.     The Court also has personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants because, on information and belief, each Defendant is a citizen of, and domiciled in, California. The Court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b). As noted above, Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at FCI Dublin, located at 5701 8th St., Dublin, California 94568.

THE PRIDE
LAW FIRM

- 4 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

1
2          **INTRADISTRICT ASSIGNMENT**

3          17.    Pursuant to Civil Local Rule 3-29(d), Plaintiff's action is properly

4    assigned to the San Francisco Division of this District because the action arises

5    from actions and omissions taken in Alameda County, California, where FCI

6    Dublin is located.

7                              **PARTIES**

8          18.    Plaintiff is an individual and citizen of Seattle, Washington. During the

9    relevant period, Plaintiff was incarcerated at FCI Dublin in Dublin, California.

10         19.    Upon information and belief, Defendant PEREZ is an individual and

11   citizen of California, where he is domiciled. During the relevant period, PEREZ

12   worked as correctional officer at FCI Dublin in the Bureau of Prison's (BOP's)

13   employment. While performing the acts and omissions that Plaintiff alleges in this

14   complaint, PEREZ was acting within the scope of his official employment, or with

15   the BOP's permission and consent.

16         20.    Upon information and belief, Defendant GARCIA is an individual and

17   citizen of California, where he is domiciled. During the relevant period, GARCIA

18   worked as the warden at FCI Dublin in the BOP's employment. While performing

19   the acts and omissions that Plaintiff alleges in this complaint, GARCIA was acting

20   within the scope of his official employment, or with the BOP's permission and

21   consent.

22         21.    Defendant United States is a governmental entity. During the relevant

23   period, the United States, through the BOP, a federal agency, was in possession and

24   control of FCI Dublin, a minimum-security federal prison located in Dublin,

25   California. The United States has waived sovereign immunity as to Plaintiff's tort

26   claims against Defendants, pursuant to FTCA, 28 U.S.C. § 2674.

27         22.    Plaintiff is ignorant as to the true names, identities, and capacities of

28   Defendants DOES 1 through 25, inclusive. Therefore, Plaintiff sues these

THE PRIDE
LAW FIRM
PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Defendants under the fictitious designation of DOES 1 through 25. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their liability.

23.     Defendants Does 1-25, individually and in their official capacities, at all times relevant herein, were correctional officers and/or employees for the BOP, acting in their official capacity. These defendants include correctional officers in supervisory positions that participated in training PEREZ and other employees, in the supervision of PEREZ and other employees, and in reporting incidents of sexual abuse to the BOP.

## STATEMENT OF FACTS

**A.     PREA regulations provide mandatory procedures for preventing, reporting, investigating, and responding to reports of staff sexual abuse of an inmate.**

24.     PREA regulations require the BOP to have a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the [BOP's] approach to preventing, detecting, and responding to such conduct," which the BOP has adopted.[1]

25.     PREA regulations also comprehensively mandate that the BOP and its correctional staff follow certain policies and procedures when an inmate has allegedly suffered sexual abuse.

26.     First and foremost, the BOP "shall require all staff to report immediately" "any knowledge, suspicion, or information regarding an incident of sexual abuse" and "staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."[2] "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency

---

[1] *See* BOP Program Statement No. 5324.11, at 15 (Jan. 6, 2014); 28 C.F.R. § 115.11(b), (c).
[2] 28 C.F.R. § 115.61(a).

policy, to make treatment, investigation, and other security and management decisions."[3]

27.    Regardless of whether a report of sexual abuse is made, if an inmate is "subject to a substantial risk of imminent sexual abuse, [BOP employees] shall take immediate action to protect the inmate."[4]

28.    Upon receiving a report of inmate sexual abuse, the facility is required to report it to a designated internal investigator[5] and conduct an administrative or criminal investigation.[6] A criminal investigation is required for all allegations of inmate sexual abuse, "unless the allegation does not involve potentially criminal behavior."[7] All such referrals must be documented.[8]

29.    Given the high risk for retaliation against a reporter or victim, the BOP is required to "protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff and shall designate which staff members or departments are charged with monitoring retaliation."[9] A prison's PREA compliance manager must monitor an inmate sexual abuse victim for 90 days after a report of abuse is filed to ensure that he or she is not retaliated against by prison staff.[10]

30.    The BOP must also provide ongoing access to mental healthcare to all inmates who have been victimized by sexual abuse while detained in the facility.[11]

31.    The BOP is required to train every employee who may have contact with inmates to comply with the above PREA regulations and must "document,

---

[3] *Id.* § 115.61(b)
[4] *Id.* § 115.62
[5] *Id.* § 115.61(e)
[6] *Id.* § 115.22(a); *see also Id.* § 115.71
[7] *Id.* § 115.22(b)
[8] *Id.*
[9] *Id.* § 115.67(a).
[10] 28 C.F.R. § 115.67(c); BOP Program Statement No. 5324.11, at 44 (Jan. 6, 2014)
[11] *Id.* § 115.83(a), (b), (h).

1  through employee signature or electronic verification, that employees

2  understand the training they have received."[12] In addition to this general

3  training, specialized training is required for sexual abuse investigators.[13]

4      32.    Where an investigation finds that a staff member has engaged in

5  sexual abuse, the presumptive disciplinary sanction is termination, and some

6  form of discipline is required.[14]

7      33.    Finally, all documentation relating to an allegation of inmate sexual

8  abuse must be maintained[15] and securely retained for at least ten years after the

9  date of initial collection.[16]

10      34.    Defendants repeatedly violated these PREA regulations.

11  **B. Defendant PEREZ routinely subjected Plaintiff to sexual abuse.**

12      35.    Plaintiff began her time at the FCI Dublin camp in approximately

13  2012 and throughout her sentence she was subjected to an environment of abuse

14  and discrimination.

15      36.    That year, DHO PEREZ began his sexual harassment and abuse of

16  Plaintiff. During that time, DHO PEREZ was in charge of handling disciplinary

17  issues.

18      37.    In 2014, Plaintiff was placed in the Solitary Housing Unit ("SHU")

19  and was sent to see DHO PEREZ. During their initial meeting, PEREZ began

20  preying upon Plaintiff. Because Plaintiff was handcuffed, PEREZ rubbed and

21  caressed her hands while they were behind her back.

22      38.    About a month later, PEREZ escorted Plaintiff out of the SHU, and

23  he caressed her shoulder. PEREZ asked her for photos, so she gave him two

24  copies of her commissary photos.

25

26  —————————————

[12] *Id.* § 115.31.

27  [13] *Id.* § 115.34.
[14] *Id.* § 115.76.

28  [15] *Id.* § 115.87(a), (d).
[16] *Id.* § 115.89(a), (d).

39. Over time, the physical touching escalated, and PEREZ would bring Plaintiff into the lieutenant office in order to "make out" with her and fondle her.

40. Starting in 2014, PEREZ brought Plaintiff into the office approximately every other week to engage in sexual misconduct.

41. PEREZ would touch Plaintiff's breasts over and underneath her shirt. Plaintiff was too afraid to report DHO PEREZ because she did not want to get him in trouble.

42. During their visits, DHO PEREZ told Plaintiff where to sit when she was wearing dresses, and he would run his hand up her legs.

43. PEREZ manipulated Plaintiff by acting like a father figure, knowing that Plaintiff had a strained relationship with her own father. DHO PEREZ did favors for Plaintiff like putting money on her books. Plaintiff eventually had "David" tattooed on her arm.

44. In 2016, Plaintiff was released to a halfway house. On her way there, DHO PEREZ met up with her at the bus station in Bakersfield, California. They met in the parking lot, and he took her into his car. PEREZ made out with Plaintiff, lifted her shirt, put his mouth on her breasts, and rubbed her vagina outside of her clothing. PEREZ had Plaintiff rub his penis underneath his pants.

45. In approximately 2017, Plaintiff was sent back to FCI Dublin, where her relationship with DHO PEREZ continued.

46. Again, DHO PEREZ brought her into the office about every other week to kiss and fondle her.

47. DHO Perez ended the relationship in approximately 2018 when he told her he was becoming a "man of God."

### C. FCI Dublin is known for its culture of tolerating sexual misconduct.

48.     Based on information and belief, throughout the last three decades, the United States has repeatedly ignored incidents of sexual misconduct at FCI Dublin. Currently, six employees have been indicted by the Department of Justice for sexual misconduct, five have pled guilty or been convicted, and nine other employees are on administrative leave pending investigation – the most in U.S. history of the Bureau of Prisons. Twenty-five total were under investigation as of May 2022.[17] The following examples are just a fraction of the magnitude of sexual misconduct and violence that transpired at FCI Dublin:

- In 1996, BOP officers took three female inmates from FCI Dublin to a male unit, opened their cell doors, and allowed male inmates to rape them.

- In the late 1990's and early 2000's, four male BOP employees were either convicted or pled guilty to sexually abusing female inmates at FCI Dublin.

- According to the U.S. Senate Report,[18] in the early 2010s, approximately a dozen Dublin employees were removed for their sexual abuse of inmates, "including one who videotaped himself having sex with inmates and stored those tapes in a prison locker. None were arrested."

- In 2019, an FCI inmate, Victoria Peterson, filed a suit against Officer William Martinez for abusing his power and using excessive force to have sex with her. She also sued the warden at the time, Wiley Jenkins, for failing to take disciplinary action

---

[17] See Lisa Fernandez, 25 Dublin prison employees under investigation for sex, drug, lying abuses, KTVU (May 5, 2022), https://www.ktvu.com/news/25-dublin-prison-employees-under-investigation-for-sex-drug-lying-abuses.

[18] JON OSSOFF & RON JOHNSON, S. REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the permanent subcomm. on investigations December 13, 2022 hearing).

against Martinez and allowing him to continue working at FCI
Dublin.

- In 2019, inmate L.I. filed a claim against former FCI Dublin
  chaplain James Highhouse for sexual assault. Highhouse started
  having unwanted physical contact with L.I. in May of 2018, and
  although he was ultimately charged with abuse of L.I., prosecutors
  said he engaged in predatory conduct with at least six women from
  2014 to 2019. Highhouse pleaded guilty and was sentenced to
  seven years in prison.

- Between approximately June of 2020 and September of 2020,
  inmate A.R. witnessed Klinger's sexual relationship with another
  inmate. She witnessed Klinger take women into a hidden areas to
  have sex with him. Klinger and CO Jaime Perez spoke with
  sexually explicit language toward A.R. CO Perez would bump up
  against her and grab her breasts. Officer Perez also took photos of
  A.R.

- Between approximately August 2020 and November 2020, inmate
  D.V. was pressured into an ongoing sexual relationship with FCI
  Dublin Correctional Officer Enrique Chavez. CO Chavez kissed
  her, touched her bare breasts and vagina, and had D.V. touch his
  penis. CO Chavez was known to bring inmates into the kitchen
  closet for "meetings."

- In 2021, CO Chavez sexually harassed another inmate, J.C., while was
  working in the kitchen. CO Chavez would brush his erect penis up
  against J.C. and said "look, it's hard for you." CO Chavez was charged
  with abusive sexual contact of a prisoner in violation of 18 U.S.C. §
  2244(a)(4). He pled guilty to the conduct and was sentenced to 20
  months in prison.

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

- Another inmate, A.J., suffered sexual abuse at FCI Dublin between approximately September 2021 and May of 2022. When A.J. arrived, Paramedic Fraser Cohen grabbed her breasts with no chaperone. Later throughout her incarceration, CO Nicholas Ramos consistently watched her in the shower, and both CO Ramos and CO Phillips made her strip, cough, and squat for cavity searches.

- From April through October 2020, Klinger manipulated inmate M.R. into performing oral sex and engaging in forced sexual intercourse.

- Saucedo watched inmate A.J. in the shower on multiple occasions. Saucedo ripped open the shower curtain while inmate L.C. was showering, causing her to fall over so he could see her naked body. Saucedo also sexually harassed L.C. by making sexual noises at her and squirting shampoo on her clothing, mimicking ejaculation. Additionally, inmate L.A. was sexually harassed by Saucedo when he forced her to bend over in front of him.

- Inmate D.S. was forced to engage in oral sex with nurse Jeff Wilson. Jeff Wilson also forced inmate L.A. to show him her breasts.

- Another inmate went to TDY (temporary duty) medical employee Jay Alexander (exact name unknown) for medical treatment on her back, and he pulled her underwear down and touched her buttocks and in between her inner thighs.

- Inmate G.M. was preyed upon by Disciplinary Hearing Officer (DHO) David Perez for over three years. David Perez would "make out" with G.M., touch her breasts, caress her, and make her believe

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

he was her boyfriend. When G.M. was on probation, David Perez met up with her and had her touch his genitals.

- Another kitchen foreman, O'Connor (full name unknown) touched inmate N.P.'s buttocks and brushed his hand over her chest.

- CO Jones would tell inmate J.C. to "suck his dick" and he would tell her to "Get on your knees." CO Jones would grab his genitalia and tell her to "look."

49.   Upon information and belief, at least 25 FCI Dublin employees, including those who courageously reported and/or acted to prevent instances of sexual violence, have been reassigned to other prisons. This reassignment got the attention of Congresswoman Jackie Speier, who wrote a letter to the new Director of the Federal Bureau of Prisons, Colette Peters, requesting information about FCI Dublin's "culture of rampant sexual misconduct and subsequent cover-ups."[19]

50.   In December 2022, the United States Senate reported on the Permanent Subcommittee on Investigations findings from its investigation into sexual abuse of female prisoners in custody of the BOP. The report found that in at least four BOP facilities (FCI Dublin being one of them), multiple women endured ongoing sexual abuse for months or years. The report's conclusion stated, "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms. Moving forward, BOP

---

[19] KTVU Fox 2 Reporter Lisa Fernandez: https://www.ktvu.com/news/dublin-prison-guard-says-she-was-forced-out-for-reporting-abuse

should consider the Subcommittee's findings as it works to implement changes to how it handles sexual abuse of female prisoners by male BOP employees."[20]

51.    Defendant GARCIA was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact and one count of lying to the FBI. GARCIA was sentenced to 5 years and 10 months in prison. Former CO Ross Klinger pled guilty to federal criminal charges for Sexual Abuse of a Ward (18 U.S.C. § 2243(b)) stemming out of his conduct against two other inmates and he is awaiting sentencing. CO John Bellhouse was convicted by federal jury of five counts involving sexually abusive conduct against two female victims who were serving prison sentences. Bellhouse's sentencing hearing for August 30, 2023.  Additionally, in March of 2022, Defendant SAUCEDO and CO Nicholas Ramos were placed on leave as a result of sexual misconduct allegations. CO Ramos committed suicide on August 21, 2022.

52.    Defendant United States failed to provide the sexual abuse victims with counseling services or victim advocates. The victims were retaliated against with interviews and examinations after filing their Federal Tort Claims. As a result of reporting the misconduct, the victims were put in the Solitary Housing Unit (SHU), received daily room tosses, and were placed on lock downs. The victims also had their phone calls and visitations taken away, their legal mail was read, and their legal phone calls were monitored.

---

[20] JON OSSOF & RON JOHNSON, S.REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the Permanent Subcomm. on Investigations December 13, 2022 hearing).

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

# CLAIMS FOR RELIEF

## CLAIM ONE

## EIGHTH AMENDMENT, CRUEL AND UNUSUAL PUNISHMENT – SEXUAL ABUSE

## (Against GARCIA, PEREZ, and DOES 1-25, inclusive, in their individual capacities)

53.　Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

54.　Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against PEREZ, GARCIA, and DOES 1-25, inclusive, in their individual capacities.

55.　At all material times, against PEREZ, GARCIA, and DOES 1-25, inclusive, were federal employees of the BOP at FCI Dublin, acting under the color of federal authority with respect to the allegations in this complaint.

56.　PEREZ violated Plaintiff's right to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

57.　PEREZ'S sexual abuse of Plaintiff occurred under coercive circumstances.

58.　By intentionally subjecting Plaintiff to sexual acts, PEREZ acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

59.　The inhumane conditions of confinement caused by PEREZ'S repeated sexual abuse caused Plaintiff severe physical, mental, and emotional harm.

60.　GARCIA was the warden during the period that Plaintiff was being abused by PEREZ. As the warden, GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at

FCI Dublin. GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

61.     GARCIA was also sexually abusing wards at FCI Dublin, and in his capacity as warden, thus ratified PEREZ'S behavior. GARCIA led PREA training and chaired the audit of FCI Dublin under the PREA. Thus, the man responsible for teaching inmates how to report rape was in fact a serial rapist of inmates.

62.     GARCIA had knowledge of abuses occurring at FCI Dublin prior to the sexual abuse of Plaintiff.  Garcia did nothing to stop it, including failing to conduct an investigation among other things. GARCIA had a legal duty to investigate complaints of abuse.  He did not.  This failure caused and was a substantial factor in allowing abuses to continue to occur to inmates, including Plaintiff.

63.     GARCIA accepted guilt for his sexual abuse of other inmates, and GARCIA knew or should have known that PEREZ was sexually abusing Plaintiff.

64.     PEREZ, GARCIA, and DOES 1-25, inclusive, acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

65.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM TWO

## GENDER VIOLENCE (Cal. Civ. Code § 52.4)

### (Against PEREZ in his capacity)

66.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

67.     Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against PEREZ in his individual capacities.

68.     Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

69.     PEREZ discriminated against Plaintiff based on her female gender when they repeatedly sexually abused her, by physically subjecting her to sexual acts, under the coercive conditions that were present between them.

70.     PEREZ'S actions occurred outside the course and scope of his employment. His actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

71.     By repeatedly subjecting Plaintiff to sexual acts, PEREZ caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

72.     PEREZ acted with malice and oppression and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

73.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury,

THE PRIDE
LAW FIRM

past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

74.     Plaintiff also seeks attorneys' fees and costs, as expressly authorized by statute.

## CLAIM THREE

### SEXUAL ASSAULT (Cal. Civ. Code § 1708.5)

### (Against PEREZ in his individual capacity)

75.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

76.     Plaintiff brings this claim for sexual assault under California Civil Code § 1708.5 against PEREZ in his individual capacities.

77.     PEREZ violated Plaintiff's statutory right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

78.     PEREZ'S sexual abuse of Plaintiff occurred under coercive circumstances.

79.     For these reasons, PEREZ'S sexual abuse of Plaintiff, an inmate in the custody of their employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

80.     Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, PEREZ must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

81.     By intentionally subjecting Plaintiff to sexual acts, PEREZ acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

82.     PEREZ'S actions occurred outside the course and scope of his employment. His actions and judgment in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

83.     By repeatedly subjecting Plaintiff to sexual acts, PEREZ caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

84.     PEREZ acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

85.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

<u>**CLAIM FOUR**</u>

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(California common law)**

**(Against PEREZ in his individual capacity)**

86.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

87.     Plaintiff brings this claim for intentional infliction of emotional distress under California common law against PEREZ in his individual capacities.

88.     PEREZ engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual acts while she was incarcerated as an inmate in his employer's custody. PEREZ abused his authority over Plaintiff and his power to affect her

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

1  interests in a manner that was beyond all bounds of decency and must be

2  regarded as atrocious and utterly intolerable in a civilized society.

3      89.    PEREZ'S sexual abuse caused Plaintiff to suffer, and continue to

4  suffer, severe emotional distress, including fear, depression, and anxiety. This

5  distress was so substantial and enduring that no reasonable person in a civilized

6  society should be expected to endure it.

7      90.    PEREZ intended to cause Plaintiff this emotional distress because

8  he knew that emotional distress was certain to result from his sexual abuse of an

9  inmate.

10     91.    PEREZ'S actions occurred outside the course and scope of his

11 employment. His actions and judgments in sexually abusing Plaintiff were so far

12 below the acceptable standard of custodial conduct, as exemplified by PREA

13 regulations and BOP policy prohibiting sexual abuse, that they could not have

14 been making a policy judgment in his decision to sexually abuse Plaintiff.

15     92.    PEREZ acted with malice and oppression, entitling Plaintiff to

16 punitive damages.

17     93.    Plaintiff seeks the following relief for her injuries: (a) nominal

18 damages resulting from the repeated violations of her personal dignity and from

19 physical injury; (b) non-economic damages consisting of past physical injury,

20 past and future mental pain and suffering, mental anguish, emotional distress,

21 and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM FIVE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (California common law)

### (Against PEREZ in his individual capacity)

26     94.    Plaintiff repeats and incorporates by reference every allegation

27 contained in the preceding paragraphs as if fully set forth herein.

28

95.     Plaintiff brings this claim for negligent infliction of emotional distress under California common law against PEREZ in his individual capacities.

96.     PEREZ had a special and heightened duty of care to Plaintiff as her jailer that required him to protect her against reasonably foreseeable emotional harm, including from sexual abuse. PREA regulations and BOP policy prohibiting sexual abuse confirm this special and heightened duty.

97.     Alternatively, PEREZ had a general duty of care with respect to Plaintiff.

98.     PEREZ engaged in negligent conduct and in a willful violation of statutory standards. On multiple occasions, PEREZ breached his duty of care and the PREA regulations by purposefully and willingly subjecting Plaintiff to sexual acts. PEREZ'S breach of his duty of care and willful violations of statutory standards were directed at Plaintiff.

99.     By repeatedly subjecting Plaintiff to sexual acts, PEREZ proximately caused her to suffer, and to continue to suffer, serious and severe emotional distress.

100.   Plaintiff's emotional reactions are not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the mental distress caused by being sexually abused by a BOP employee who had a duty to protect her from such abuse. No reasonable person in a civilized society should be expected to endure that kind of mental distress.

101.   PEREZ'S actions occurred outside the course and scope of his employment. His actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually touch Plaintiff.

1    102.   PEREZ acted with malice and oppression, and his conduct

2  constitutes a reckless or callous disregard of Plaintiff rights, entitling her to

3  punitive damages.

4    103.   Plaintiff seeks the following relief for her injuries: (a) nominal

5  damages resulting from the repeated violations of her personal dignity and from

6  physical injury; (b) non-economic damages consisting of past physical injury,

7  past and future mental pain and suffering, mental anguish, emotional distress,

8  and for offenses to her personal dignity; and (c) punitive damages.

9                              **CLAIM SIX**

10                   **BATTERY (California common law)**

11              **(Against PEREZ in his individual capacities)**

12    104.   Plaintiff repeats and incorporates by reference every allegation

13  contained in the preceding paragraphs as if fully set forth herein.

14    105.   Plaintiff brings this claim for battery under California common law

15  against PEREZ in his individual capacity.

16    106.   PEREZ committed battery against Plaintiff by repeatedly sexually

17  abusing her while she was incarcerated as a minimum-security inmate at FCI

18  Dublin.

19    107.   PEREZ'S sexual abuse of Plaintiff occurred under coercive

20  circumstances.

21    108.   For these reasons PEREZ's sexual abuse of Plaintiff, an inmate in

22  the custody of his employer, was deeply offensive to her personal dignity, would

23  offend a person of ordinary sensitivity, and was unwarranted by the social

24  usages in prison when the contact was made.

25    109.   Given the deeply offensive nature of these sexual acts and lack of

26  any possible penological justification for these sexual acts PEREZ must have

27  subjected Plaintiff to these sexual acts with the intent to cause a harmful or

28  offensive contact with Plaintiff's person.

110.   By intentionally subjecting Plaintiff to sexual acts PEREZ acted maliciously in a manner that is deeply offensive to human dignity and void of any penological justification.

111.   PEREZ'S actions occurred outside the course and scope of his employment. His actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

112.   By repeatedly subjecting Plaintiff to sexual acts, PEREZ caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

113.   PEREZ acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

114.   Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM SEVEN

## EIGHTH AMENDMENT, DELIBERATE INDIFFERENCE – FAILURE TO PROTECT

**(Against GARCIA and DOES 1-25, inclusive, in their individual capacities)**

115.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

116.   Plaintiff brings this claim against GARCIA and DOES 1-25, inclusive, in their individual capacities under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

117.   At all material times, GARCIA and DOES 1-25, inclusive, were federal employees, acting under the color of federal authority with respect to the allegations set forth above.

118.   GARCIA and DOES 1-25, inclusive, deprived Plaintiff of her right to be free from cruel and unusual punishment by failing to protect her from a substantial risk of serious harm from sexual abuse by PEREZ, by acting in conscious disregard of that known risk.

119.   GARCIA, as the warden, ratified PEREZ'S conduct by engaging in the same or similar acts as PEREZ with other inmates at FCI Dublin. Therefore, GARCIA purposefully denied Plaintiff protection from the known and substantial risk of serious harm of PEREZ'S sexual abuse.

120.   Prior to Plaintiff's sexual abuse, GARCIA had knowledge of prior abuses occurring at FCI Dublin and did nothing to stop it, including failing to conduct an investigation among other things. GARCIA had a legal duty to investigate complaints of abuse.  He did not.  This failure caused and was a substantial factor in allowing abuses to continue to occur to inmates, including Plaintiff.  GARCIA consciously allowed inmates, including Plaintiff, to be abused.

121.   Based on his position and behavior in the prison, GARCIA knew or should have known that PEREZ was abusing Plaintiff.

122.   GARCIA and DOES 1-25, inclusive, failed to take immediate action to protect Plaintiff, including by separating her from PEREZ, in violation of 28 C.F.R. § 115.62.

123.   GARCIA and DOES 1-25, inclusive, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable officer in the circumstances would have appreciated the obviously high degree of risk involved.

124.   GARCIA and DOES 1-25, inclusive, therefore acted with deliberate indifference to substantial risk of sexual abuse in violation of the Eighth Amendment, subjected Plaintiff to dangerous and debasing conditions of confinement, including sexual abuse, and violated her fundamental rights to safe and humane confinement. This cruel and unusual punishment caused Plaintiff physical, mental, emotional, and constitutional injuries.

125.   GARCIA and DOES 1-25's, inclusive, deliberate indifference was malicious, oppressive, reckless, and callous, entitling Plaintiff to punitive damages.

126.   Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## FEDERAL TORT CLAIMS ACT ADMINISTRATIVE EXHAUSTION

127.   Claims EIGHT and NINE, below, are asserted against the United States.

128.   Plaintiff has exhausted these claims against the United States under the FTCA.

129.   Plaintiff submitted a "Claim for Damage Injury, or Death" to the BOP for "permanent injuries, mental anguish, embarrassment, humiliation, pain, distress, and damages" as a PREA victim involving staff at FCI Dublin in the sum of $10,000,000.00.

130.   A true and correct copy of Plaintiff's FTCA claim is attached hereto as **Exhibit A**.

131.   The BOP received her administrative claim on December 27, 2022.

132.   A true and correct copy of the BOP's acknowledgment is attached hereto as **Exhibit B**.

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

133.   By June 27, 2023, six months after the BOP received Plaintiff's administrative claim, the BOP has neither accepted nor rejected the claims. Pursuant to 28 U.S.C. § 2675(a), Plaintiff elects to consider this failure to act as a final denial of her claim.

### CLAIM EIGHT

### NEGLIGENCE (FTCA, California common law)

### (Against the United States)

134.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

135.   Plaintiff brings this claim against the United States under the FTCA based on the actions and/or omissions of United States, PEREZ, GARCIA, and DOES 1-25, inclusive, taken while working at FCI Dublin in their capacities as employees of the BOP and acting within the scope of their employment, with the permission and consent of the United States.

136.   At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

137.   **Duty**. United States, PEREZ, GARCIA, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

138.   The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

139.   Alternatively, United States, PEREZ, GARCIA, and DOES 1-25, inclusive, had a general duty of care to Plaintiff.

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

140.   PEREZ'S sexual abuse of Plaintiff was reasonably foreseeable to the United States because PEREZ'S conduct made it obvious they were sexually abusing Plaintiff.

141.   **Breach of duty—inadequate supervision**. The United States failed to supervise and operate FCI Dublin in a manner that would have prevented PEREZ'S ongoing sexual abuse of Plaintiff.

142.   The United States did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

143.   PEREZ'S sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States.

144.   **Injuries and relief sought**. Plaintiff suffered a physical violation, a violation of her liberty interest in being free from sexual abuse, injury from being denied freedom of movement and programming, and severe mental and emotional anxiety and distress, and will continue to suffer severe mental and emotional anxiety and distress in the future.

145.   Plaintiff seeks the following relief for her injuries: non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

1

## CLAIM NINE

2

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

3

### (FTCA, California law)

4

### (Against the United States)

5    146.   Plaintiff repeats and incorporates by reference every allegation

6    contained in the preceding paragraphs as if fully set forth herein.

7    147.   Plaintiff brings this claim against the United States under the FTCA

8    based on the actions and/or omissions of United States, PEREZ, GARCIA, and

9    DOES 1-25, inclusive, which were taken while working at FCI Dublin in his

10   capacity as an employee of the BOP and acting within the scope of his

11   employment, with United States' permission and consent.

12   148.   At all material times, Plaintiff was an inmate in the custody of the

13   BOP, a federal agency of the United States in possession and control of FCI

14   Dublin.

15   149.   **Duty**. United States, PEREZ, GARCIA, and DOES 1-25, inclusive,

16   had a custodial duty, as well as a mandatory statutory obligation under PREA

17   regulations and BOP policy, to protect inmates incarcerated by the United States

18   from foreseeable harm, including, but not limited to, harm from sexual abuse.

19   150.   **Breach of duty—inadequate supervision**. The United States

20   failed to supervise and operate FCI Dublin in a manner that would have

21   prevented PEREZ'S ongoing sexual abuse of Plaintiff.

22   151.   The United States did not take reasonable, available measures to

23   abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even

24   though a reasonable administrator would have complied with PREA regulations

25   regarding proper prison operations, including adequately monitoring work

26   programming and correctional officer assignments.

27   152.   PEREZ'S sexual abuse of Plaintiff occurred as the direct and

28   proximate result of the supervisory negligence of the United States.

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

153.   **Injuries and relief sought**. United States, PEREZ, GARCIA, and DOES 1-25, inclusive, actions and omissions caused Plaintiff to suffer, and continue to suffer, serious and severe emotional distress, including fear, depression, and anxiety, because of being repeatedly sexually abused.

154.   Plaintiff's emotional reaction was not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the emotional distress caused by being sexually abused by a correctional officer, who had a duty to protect her from such abuse. Plaintiff's distress was of such a substantial and enduring quality that no reasonable person in a civilized society should be expected to endure it.

155.   By reason of the United States' negligent infliction of emotional distress Plaintiff has suffered severe emotional distress and will continue to suffer severe mental and emotional anxiety and distress.

156.   Plaintiff seeks nominal and compensatory damages for these violations.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1.   Nominal damages in an amount to be determined at trial;

2.   Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

3.   Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights;

4.   An award to Plaintiff of reasonable costs; and

5.       An award to Plaintiff of reasonable attorneys' fees pursuant to 28 U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

6.       Such other and further relief as the Court may deem fit and proper.

Respectfully Submitted,

Dated: July 18, 2023                 **THE PRIDE LAW FIRM**

/s/ Jessica K. Pride
Jessica K. Pride
Email: jpride@pridelawfirm.com
Attorneys for Plaintiff

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL